## MATTER OF VARUGHESE

### In Deportation Proceedings

### A-21582322

*Decided by Board June 6, 1980*

(1) In determining whether or not one has been ordained as a minister and has carried on the vocation of a minister of a recognized religious denomination, acceptable evidence includes a letter or other appropriate statement signed by the Superior or Principal of the religious denomination.

(2) The respondent, a full-time student seeking an adjustment of status, has not established that he qualifies for "special immigrant" status as a minister under section 101(a)(27)(C) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(27)(C), when his work at the church has been of a voluntary nature delegated to him by the minister.

(3) Although the respondent preaches every other Sunday and sometimes takes the offering when the deacons do not come to the Service, he has not carried on the vocation of minister of the church as defined by section 101(a)(27)(C) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(27)(C), when only 9 hours per week are devoted to church activities, and he is not compensated.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT: Pro se

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members.

In a decision dated July 25, 1978, the immigration judge found the respondent deportable as charged, denied his application for adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255, and granted him the privilege of voluntary departure in lieu of deportation. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a 38-year-old male native and citizen of India who was allegedly ordained as a minister in India in 1968. He entered the United States at New York on August 5, 1973, as a non-immigrant student authorized to remain until June 20, 1977. On June 24, 1977, the Church of God Chapel sought to confer preference status upon the

respondent as a minister.

In a Service interview on September 1, 1977, the respondent averred that he did not do any work for the Church of God but only attended worship services. When the petition was approved, however, he would be the mission director, sending the gospel to other countries and keeping records.

The District Director predicated his denial of the petition on the fact that the respondent had not been employed since his entry on August 5, 1973, and, therefore, had not been primarily engaged in a religious occupation for 2 years prior to seeking adjustment based upon a labor certification, as required by 20 C.F.R. 656.22(e).

On appeal to the Regional Commissioner, the decision of the District Director was affirmed on May 3, 1978. The Regional Commissioner found that the respondent/beneficiary had not been primarily engaged as a minister for the previous 2 years.

On July 11, 1978, an Order to Show Cause was issued charging the respondent with deportability under section 241(a)(2) of the Act, 8 U.S.C. 1251(a)(2), as an alien who had remained longer than permitted.

A deportation hearing was held on July 25, 1978. The respondent denied that his student visa had expired on June 20, 1977, and that he had remained beyond that date without authorization. He testified that he started working for the Church of God Chapel in June 1976, without compensation. His job entailed spending every other Sunday preaching and leading prayer meetings on Wednesdays. He spent approximately 9 hours per week at the church. In addition, he maintained 12 semester hours of classroom work at Southwestern College. Upon adjustment of his status to that of a minister, the Church agreed to pay him $25 per week for his work as a mission director.

The immigration judge treated his denied visa petition as an application for adjustment of status under section 245 of the Act. He found the respondent deportable as charged in that the respondent's Arrival-Departure Card, Form I-94, clearly indicated that the respondent was authorized to remain in the United States until June 20, 1977. The immigration judge found that the respondent did not qualify for adjustment of status as a minister under section 101(a)(27)(C) of the Act, 8 U.S.C. 1101(a)(27)(C), inasmuch as he had not been principally engaged in religious work. He further found the respondent ineligible for relief under section 245 of the Act based upon section 245(c) of the Act. Because the respondent had worked without permission of the Service, he was precluded from adjusting his status pursuant to section 245 of the Act. The respondent was granted 5 months voluntary departure to complete the fall semester at the university.

On appeal, the respondent contends that 1) his petition should have been approved, 2) he was unable to extend his stay in the United States

because the Service had his I-94, and 3) the law is contradictory in that a nonimmigrant student cannot work without permission of the Service. Therefore, he could never obtain the requisite 2 years experience.

Pursuant to 8 C.F.R. 3.1(b)(5), this Board is without jurisdiction to review the denial of a preference petition based upon a profession or occupation under section 203(a)(3) or 203(a)(6) of the Act, 8 U.S.C. 1153(a)(3) or 1153(a)(6). The respondent may sue for review in the United States District Court.

In order to establish an alien's deportability as an "overstay," the Service need only show that the alien was admitted as a nonimmigrant "... for a temporary period, that the period has elapsed, and that the nonimmigrant has not departed." *Milande v. INS*, 484 F.2d 774, 776 (7 Cir. 1973); *Matter of Teberen*, 15 I&N Dec. 689 (BIA 1976). It is clear to this Board that the Service has established that the respondent is an overstay and is therefore deportable.

The immigration judge erroneously considered the respondent's eligibility for adjustment of status as if an adjustment application had been filed. Nevertheless, in order to avoid leaving the respondent in doubt, through no fault of his own, we shall address the issue of adjustment of status.

In order to be eligible for adjustment of status, the respondent must establish that he is eligible to receive an immigrant visa, that he is admissible to the United States for permanent residence, and that an immigrant visa is immediately available to him at the time his application for adjustment is filed. An alien seeking an adjustment of status to that of a permanent resident is assimilated to the position of an alien seeking entry to the United States for permanent residence. *Campos v. INS*, 402 F.2d 758 (9 Cir. 1968), *cert. denied*, 429 U.S. 999 (1976), citing *Amarante v. Rosenberg*, 326 F.2d 58 (9 Cir. 1964); *Ambra v. Ahrens*, 325 F.2d 468 (5 Cir. 1963).

The respondent has based his application for adjustment of status on the contention that he is a "minister" of a religious denomination and thus classifiable as a special immigrant pursuant to section 101(a)(27)(C)(i) of the Act. Section 101(a)(27)(C)(i) defines, in pertinent part, a special immigrant as:

> an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of carrying on the vocation of minister of a religious denomination, and whose services are needed by such religious denomination having a bona fide organization in the United States.

The Act does not provide a definition of the term minister. State Department regulation 22 C.F.R. 42.25, however, contains the following elaboration:

> (b) The term "minister", as used in section 101 (a)(27)(C) of the Act, means a person

duly authorized by a recognized religious denomination having a bona fide organiza-
tion in the United States to conduct religious worship, and to perform other duties
usually performed by a regularly ordained pastor or clergyman of such denomination.
The term shall not include a lay preacher not authorized to perform the duties usually
performed by a regularly ordained pastor or clergyman of the denomination of which
he is a member, and shall not include a nun, lay brother, or cantor.

In *Matter of Rhee*, 16 I&N Dec. 607 (BIA 1978), we reaffirmed our
authority to consider an alien's qualifications for special immigrant
status as a minister of religion under section 101(a)(27)(C) of the Act.
*Compare Matter of Wiesinger*, 16 I&N Dec. 480 (BIA 1978).

We agree with the conclusion of the immigration judge insofar as he
found that the respondent does not meet the requirements of section
101(a)(27)(C) of the Act. Since his arrival in the United States, until he
sought to adjust his status, the respondent was a full-time student.[1]
Further, it is unclear as to whether or not the respondent was ever
ordained as a minister in India and carried on the vocation of a
minister of a recognized religious denomination in that country. Ac-
ceptable evidence that an individual meets the qualifications of a
minister, when applying for admission to this country, includes a letter
or other appropriate statement signed by the Superior or Principal of
the religious denomination in the United States. The respondent has
merely alleged that he was ordained as a minister in India.

His religious duties, if any, with the Church of God in Oklahoma
City have been of a voluntary nature delegated to him by the minister
of the church. He testified that sometimes he preaches every other
Sunday when the minister doesn't preach, and sometimes he takes the
offering when the deacons do not come to the service. He has been
performing such services without compensation since 1976. The re-
spondent has not carried on the vocation of minister with the Church
of God.[2] *Matter of Rhee, supra; Matter of Bisulca*, 10 I&N Dec. 712 (R.C.
1963).

We agree with the immigration judge that the respondent, while
carrying a full-time school schedule, cannot claim 9 hours per week in
church activities as continuously carrying on the vocation of minister
so as to satisfy the requirements of the Act. Moreover, while failure to
offer proof of his ordination might be corrected if all else were satisfac-
tory, it is immaterial here.

We do not reach the propriety of the immigration judge's finding

---

[1] 8 C.F.R. 214.2(f)(1a) provides that a full course of study at a college consists of at least
12 hours of instruction a week.

[2] Although the church allegedly provided him with a "preaching license," he has not
been ordained by the church (Tr. p. 11). Accordingly, we question whether a preaching
license provided by the Church of God is tantamount to authorization by a religious
denomination, as provided in 22 C.F.R. 42.25(b).

that the respondent is ineligible to adjust his status in that he was employed without permission of the Service.

The appeal will be dismissed.

ORDER: The appeal is dismissed.

FURTHER ORDER: The respondent is permitted to depart from the United States within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.