# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 29, 2010

No. 09-60538

Lyle W. Cayce
Clerk

SYED TALHA BOKHARI,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of
the Board of Immigration Appeals

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

On December 29, 2006, the Department of Homeland Security ("DHS") commenced removal proceedings against Syed Talha Bokhari, a native and citizen of Pakistan who entered the United States as a nonimmigrant visitor. Bokhari conceded his removability, but sought adjustment of his status from a nonimmigrant worker to a permanent resident. The Immigration Judge ("IJ") determined that Bokhari was ineligible for adjustment of status, because he had failed to maintain lawful status in this country for more than 180 days. Bokhari appealed to the Board of Immigration Appeals ("BIA"), and the BIA affirmed the IJ. Bokhari now petitions this court for a review of the BIA's decision. Bokhari argues that, because he was authorized to work in the United States, it

No. 09-60538

necessarily follows that he was authorized to be in the United States, and he thus was not in unlawful status for more than 180 days. He therefore contends that he is eligible for an adjustment of status, and that the BIA and IJ erred by not reaching the merits of his application to adjust to permanent resident status. We disagree. Finding no error, we DENY Bokhari's petition for review of the BIA's decision.

I.

Bokhari entered the United States on April 9, 2001, as a B-2 nonimmigrant visitor. His B-2 status was twice extended, rendering his presence lawful in the United States until October 9, 2002. His status changed on June 11, 2002, to a L-1A nonimmigrant worker for Syed T. Enterprises Inc. ("Syed"). Syed is a subsidiary of Mir Motors, the Pakistan-based company owned by Bokhari. Bokhari's counsel stated that, at the time of oral argument, Bokhari was Syed's sole shareholder, and sole employee.

On June 9, 2003, one day before Bokhari's approved L-1A status expired, Syed, on behalf of Bokhari, filed form I-129, seeking an extension of Bokhari's L-1A status. The I-129 application was denied on March 19, 2004. On April 19, Syed appealed, but the appeal was denied on September 2, 2005.

In the meantime, on June 8, 2004, Syed had filed an I-140 form, seeking permanent residence for Bokhari. Simultaneously, Bokhari, acting individually, filed an I-485 application for adjustment to permanent resident status. The I-140 application for permanent resident status was approved more than a year later, on July 11, 2005. Bokhari's I-485 application, however, was later denied on September 20, because he had failed, for more than 180 days before filing the application, to maintain lawful immigration status. DHS commenced removal proceedings against Bokhari on December 29, 2006.

No. 09-60538

## II.

In the proceedings below, Bokhari conceded removability, but claimed instead that he was eligible to have his I-485 application renewed. On August 17, 2007, the IJ issued her decision, finding that Bokhari's lawful immigration status ended on June 10, 2003, when his one-year term of approved L-1A status ended. She also found that Bokhari had not filed his application for adjustment of status until June 8, 2004, nearly one year after his lawful immigration status expired. Accordingly, the IJ pretermitted addressing his application for adjustment for status. Bokhari appealed the IJ's decision to the BIA.

The BIA upheld the IJ's decision on June 17, 2009. Bokhari argued that the employment authorization accompanying Syed's I-129 application granted him lawful immigration status. The government, while conceding that Bokhari had proper authorization to work, argued that work authorization does not itself also provide or determine lawful immigration status. The BIA agreed with the government's position. The BIA further concluded that lawful status derives from a grant or extension of status, and not from a pending application. Bokhari filed this petition for review.

## III.

Bokhari contends the BIA erred in upholding the IJ's decision to pretermit deciding Bokhari's application for adjustment of status.[1] He argues that the BIA erred in its interpretation and application of the relevant regulations and statutes. We have jurisdiction over these claims, as they present "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *see Mai v. Gonzales*, 473 F.3d 162, 164 (5th Cir. 2006). When considering a petition for review, we review

---

[1] We do not have jurisdiction to review DHS's discretionary decision to deny Bokhari's I-485 application to adjust status. *See* 8 U.S.C. § 1252(a)(2)(B)(I).

3

No. 09-60538

the BIA's legal conclusions *de novo*. *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (footnotes and citations omitted).[2]

Given the narrow nature of the question presented, it is worthwhile to emphasize several issues on which the parties agree: Bokhari is removable; was originally granted lawful admission to the country as a nonimmigrant visitor, and remained lawfully present as a nonimmigrant worker until June 10, 2003; and was authorized to work for Syed after June 10, for up to 240 days, during the pendency of Syed's I-129 application. The sole issue before us, therefore, is whether Bokhari was in unlawful immigration status for more than 180 days, and is thus ineligible to have his status adjusted. In making this determination, the key question is whether Syed's I-129 application for an extension of Bokhari's status gave him lawful immigration status.

Bokhari, relying heavily on *El Badrawi v. DHS*, argues that the automatic employment authorization that, under 8 C.F.R. § 274a.12(b)(20), accompanied his employer's, i.e., Syed's, I-129 application seeking an extension of his nonimmigrant status, logically gave him lawful immigration status. *See* 579 F. Supp. 2d 249, 276-77 (D. Conn. 2008) (holding that employment authorization under 8 C.F.R. § 274a.12(b)(20) results in lawful status). He thus contends that his status was lawful until March 19, 2004, when DHS denied the I-129 extension request. Thus, he contends, when he sought adjustment of his status on June 4, 2004, he had not been in unlawful status for more than 180 days, qualifying him as eligible for the status adjustment under 8 U.S.C. § 1255(k)(2)(a).

---

[2] The parties dispute whether the BIA's interpretation was reasonable, and thus entitled to *Chevron* deference. We do not decide this issue, as the statute is unambiguous, and *Chevron* applies only when a statute is ambiguous. *See Singh,* 436 F.3d at 487. Similarly, we do not determine whether Bokhari is entitled to lenity, since lenity is applied only when there are "lingering ambiguities" to be resolved. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

DHS argues that Bokhari is ineligible to have his status adjusted because he failed to maintain lawful status in this country from June 10, 2003, until June 8, 2004, a period well in excess of 180 days. *See* 8 U.S.C. § 1255(k)(2)(a). DHS acknowledges that, during this period of time, Bokhari was permitted to work for Syed under 8 C.F.R. § 274a.12(b)(20), but contends that employment authorization is not a grant of, nor is tantamount to, lawful immigration status for the authorized employee; each is a separate and independent consideration. DHS further contends that *In re Teberen*, 15 I. & N. Dec. 689 (BIA 1976), made clear that an extension application, standing alone, does not confer lawful status.

Although it is true that Bokhari meets the three statutory eligibility requirements of 8 U.S.C. § 1255(a),[3] that is not the end of the analysis. Section 1255(c)(2) further provides that Bokhari is not entitled to the adjustment of his status if he was "in unlawful immigration status on the date of filing the application for adjustment of status or . . . failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." Section 1255(c)(2)'s requirements are excused, however, if Bokhari, following his "lawful admission has not, for an aggregate period exceeding 180 days failed to maintain, continuously, a lawful status." 8 U.S.C. § 1255(k)(2)(a).

"Lawful immigration status," as the term is used in § 1255(c)(2), is granted nonimmigrants "whose initial period of admission has not expired or whose nonimmigrant status has been extended. . . ." 8 C.F.R. § 1245.1(d)(1)(ii). Bokhari was granted L-1A status on June 11, 2002, allowing him to work temporarily in the United States for Syed (a legally related entity of Mir Motors, the

---

[3] An alien is statutorily eligible for relief from removal through adjustment of status if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

international company Bokhari owns), "in a capacity that [was] managerial [or] executive." 8 U.S.C. § 1101(a)(15)(L). Thus, he had lawful immigration status through June 10, 2003. *See* 8 C.F.R. § 1245.1(d)(1)(ii). We must decide, however, whether he failed to maintain his lawful status for more than 180 days thereafter; such failure would make him ineligible for the I-145 permanent residence adjustment he sought on June 8, 2004. See 8 U.S.C. §§ 1255(c)(2), (k)(2)(a).

As we have said, it is undisputed that, while waiting for the adjudication of Syed's I-129 extension application, Bokhari was automatically authorized to continue his employment with Syed for "a period not to exceed 240 days beginning on the date of the expiration of [his] authorized period of stay." *See* 8 C.F.R. § 274a.12(b)(20). The regulation further provides that such authorization "automatically terminate[s] upon notification of" DHS's decision denying the request, which, in this case, occurred on March 19, 2004, cutting short the 240-day period. *See id.* The sole focus of our review, however, is whether Bokhari's employment authorization, which he received automatically upon the filing of Syed's I-129 application for the extension of his status, gave him legal immigration status, as defined in 8 C.F.R. § 1245.1(d)(1)(ii).

As DHS asserts, employment authorization and lawful immigration status are two separate considerations, presenting issues independent of each other. We have recognized this distinction in the context of a direct criminal appeal. *United States v. Flores*, 404 F.3d 320, 327-28 (5th Cir. 2005). In *Flores*, we held "an alien may be temporarily granted a stay of removal and be permitted to work during that stay, but still be considered illegal[]. . . ." *Id.* (internal citations and quotations omitted). Although *Flores* is not precisely our case, we find it persuasive. Moreover, under *In re Teberen*, a *grant* of an extension request confers lawful status, not the filing of the request. 15 I. & N. Dec. 689, 690. *El Badrawi* found *In re Teberen* inapplicable because the latter "was decided in

No. 09-60538

1976—15 years before the INS adopted" 8 C.F.R. § 274a.12(b)(20). 579 F. Supp. 2d at 276-77. We, however, see no basis to refrain from applying *In re Teberen*. Section 274a.12(b)(20), by its plain language, addresses employment authorization only, and thus does not address an employee's immigration status.

IV.

We thus hold that the employment authorization provided to Bokhari under 8 C.F.R. § 274a.12(b)(20) did not provide him with lawful immigration status. We further hold Bokhari was in unlawful immigration status, as defined in 8 C.F.R. § 1245.1(d)(1)(ii), after June 10, 2003, and he unlawfully remained in the United States for more than 180 days thereafter. We therefore hold that because Bokhari failed to maintain lawful status, he was ineligible to have his status adjusted under 8 U.S.C. §§ 1255(c)(2), (k)(2)(a). Bokhari's petition for review of the order of the BIA pretermitting the question of Bokhari's application and ordering him to depart the United States is therefore

DENIED.